## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, v. ROBERT A. GUNN AND OTHERS, APPELLANTS.

*Medical colleges — cannot be incorporated under chapter 319 of 1848 — chapter 367 of 1882 did not apply to colleges theretofore formed under the act of 1848.*

A medical college cannot be incorporated and organized under chapter 319 of 1848, and the acts amendatory thereof, providing for the formation of benevolent, charitable, scientific and missionary societies.
*People* v. *Cothran* (27 Hun, 344) followed.
Chapter 367 of 1882, entitled "An act to restrict the formation of corporations under chapter 319 of 1848, * * * and to legalize the incorporation of certain societies organized thereunder, and to regulate the same," provided, in its second section, that "all scientific and all literary colleges and universities organized under said acts which shall have reported to the said regents within the two years last past are hereby declared legally incorporated, and all degrees heretofore and hereafter conferred by them are declared valid."
*Held*, that the act related to scientific and literary colleges and universities, *eo nomine*, as distinguished from medical colleges, and that it was not intended to thereby legalize and declare duly incorporated medical colleges which had unlawfully attempted to organize under the said act of 1848, and which had made the said reports to the regents within the time mentioned in the act.

APPEAL from an order sustaining a demurrer, interposed by the plaintiff to the second defense in the defendant's answer, and from a judgment in favor of the plaintiff, entered thereon.

*F. J. Fithian*, for the appellant.

*Edward C. Ripley*, for the respondent.

BRADY, J. :

The action is in the nature of a *quo warranto*, and brought pursuant to subdivision 3 of section 1948 of the Code of Civil Procedure. The charge is that the defendants are illegally acting as a corporation, under the name and style of "The United States Medical College," without authority, and are exercising privileges and franchises not granted to them by law.

It appears that in May, 1878, the defendants attempted to incorporate themselves as a medical college under the name and style of "The United States Medical College," and to that end filed a certificate of incorporation, approved by a justice of this court, in the county clerk's office, under the act of 1848, for the formation of charitable, literary, scientific and benevolent societies (Laws of 1848, chap. 319), and the acts amending the same, and in pursuance thereof established a so-called medical college in the city of New York, and taught, or professed to teach, the science of medicine and to graduate matriculants with the degree of doctor of medicine, and to grant them diplomas conferring such degree.

The defendants set up their incorporation under the act of 1848, and alleged that for more than two years before the passage of the act of the legislature on the 29th of June, 1882, they duly reported to the Regents of the University of the State of New York as a medical college and literary and scientific institution, and claimed that by virtue of the provisions of acts of the legislature in the complaint stated, and in the act of 1882 (chap. 367), they were duly incorporated and authorized to perform all and singular the corporate acts in the complaint complained of.

In the case of *The People* v. *George W. Cothran and others* (27 Hun, 344), it was held that the act of 1848, already mentioned, did not provide for or authorize the incorporation of medical colleges to give instruction in the art of medicine and surgery, for a com-

pensation to be received by them, and to issue and grant diplomas to graduates. This decision of a General Term sustained the judgment of Judge BARKER, who delivered an exhaustive opinion on the subject, which is to be found in the Buffalo Medical and Surgical Journal for September, 1881. The learned justice at the Special Term in this case also delivered an elaborate opinion, in which he declared that it had already been determined that, under the act of 1848 and the amendments thereto, a medical college could not be organized, and that that judgment disposed of the demurrer adversely to the defendants herein, unless, as claimed by the learned counsel, their corporate existence was recognized and legalized by the act of 1882. (See Laws of that year, chap. 367.) The learned justice then proceeded to consider the effect of the act of 1882, and determined that the incorporation was not legalized by it. In this view we concur.

When the act of 1882 was passed it had already been declared the law of the State, by the decision to which reference has been made, that there could be no incorporation of a medical college under the act of 1848 and its amendments. The act of 1882 was entitled, "An act to restrict the formation of corporations * * * and to legalize the incorporation of certain societies organized thereunder, and to regulate the same." The word employed by the legislature, it will be noticed, is "societies," and section 2 which affects the latter element is as follows:

"All scientific and all literary colleges and universities, organized under said acts, which shall have reported to said regents within the two years last past, are hereby declared legally incorporated, and all degrees heretofore and hereafter conferred by them are declared valid; and all such colleges and universities shall be subject * * * to the same control and visitation of said regents as colleges and universities chartered by said regents."

This is a declaration on the part of the legislature not that a medical college organized under the act of 1848 and its amendments shall be declared legally incorporated, but that all scientific and literary colleges organized under such acts shall be declared legally incorporated, and this means, of course, those embraced within the provisions of, and legally organized under, the acts. The legislature certainly did not intend, as the language employed clearly indicates,

to declare a college to be legally incorporated under the provisions of the act of 1848, which a court of competent jurisdiction had declared to have been unlawfully organized. It related to all scientific and literary colleges and universities *eo nomine* and as contradistinguished from medical colleges. If the design of the legislature had been to include medical colleges, language indicating that purpose would have been employed, and the absence of such phraseology is a conclusive argument that it was not intended, more particularly when the legislature must be presumed to have been advised of and therefore to know that a medical college organized under the act of 1848 was unauthorized by its provisions or the provisions of any of its amendments.

For these reasons, without entering into any more elaborate discussion and notwithstanding the very able and exhaustive brief on the part of the appellants, it is considered to be the duty of this court to affirm the judgment appealed from.

The courts of this State cannot be too scrupulous in examining the asserted right of any college to graduate matriculants with the degree of doctor of medicine, and to grant them diplomas conferring such degree. The high and responsible duties of a doctor of medicine, relating as they do to suffering humanity and life itself, and requiring for their proper discharge a high order of culture, experience and capacity, there should not be the slightest doubt about the due and legal incorporation of every college or society assuming the power to confer upon him the necessary degree and thus enable him to practice as a physician and surgeon.

Judgment affirmed, with costs.

DAVIS, P. J., and DANIELS, J., concurred.

So ordered.